IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Nanette H., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 24 cv 50067 |
| v. ) | |
| ) | Magistrate Judge Margaret J. Schneider |
| Frank Bisignano ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Nanette H., seeks review of the final decision of the Commissioner of the Social Security Administration denying her disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

On March 16, 2022, Nanette H. ("Plaintiff") filed an application for supplemental security income, alleging a disability beginning on February 20, 2021.[1] R. 17. The Social Security Administration denied her application initially on May 6, 2022, and upon reconsideration on July 28, 2022. *Id*. Plaintiff filed a written request for a hearing and on January 31, 2023, a telephonic hearing was held by Administrative Law Judge ("ALJ") Jessica Inouye where Plaintiff appeared and testified. *Id*. Plaintiff was represented by counsel. *Id.* Jackie Bethel, an impartial vocational expert ("VE"), also appeared and testified. *Id*.

On March 22, 2023, the ALJ issued her written opinion denying Plaintiff's claim for supplemental security income. R. 17-32. Plaintiff appealed the decision to the Appeals Council, and the Appeals Council denied Plaintiff's request for review. R. 1-6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's motion to reverse and remand the Commissioner's decision [15], the Commissioner's response brief [18], and Plaintiff's reply [28].

---

[1] Plaintiff had previously filed a Title XVI application which was denied by an ALJ on February 24, 2021. R. 17. Plaintiff did not pursue review of that decision. *Id*.

### B. The ALJ's Decision

In her ruling, the ALJ applied the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 16, 2022, the application date. R. 19. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, bipolar disorder, and generalized anxiety disorder. R. 19-20. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 20-24.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work except cannot climb ladders, ropes, or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; avoid working in extreme cold, in extreme humid conditions, and around work place hazards of unprotected heights and dangerous moving machinery; can understand, remember, and carry out simple and detailed but not complex work instructions; able to sustain the necessary attention and concentration in two-hour increments throughout the day to sustain simple job duties assuming typical work day breaks; able to make simple work-related decisions; occasionally work with supervisors and workers, not in a team or tandem work environment; can have no more than occasional, brief, and superficial interactions with the general public; customer service jobs are precluded; should work primarily with things, not people; requires a routine work setting, she can deal with occasional changes, but no working with fast paced production quotas. R. 24-30. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. R. 30. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. R. 30-31. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time since March 16, 2022. R. 31-32.

### STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120-21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While substantial evidence is "more than a mere scintilla, . . . the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (internal quotation marks and citation omitted). An ALJ "need not specifically address every piece of evidence but must provide a logical bridge between the evidence and [the] conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (internal quotation marks and citation omitted). *See also Warnell*, 97 F.4th at 1054.

The Court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (internal quotation marks and citation omitted). The Court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, reweighing or resolving conflicts in the evidence, or deciding questions of credibility. . . . [The Court's] review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020).

## DISCUSSION

Plaintiff argues that the ALJ failed to support her decision with substantial evidence, in part by "playing doctor" and placing undue weight on Plaintiff's daily activities. The Court finds that the ALJ adequately supported her conclusions, including her evaluation of Plaintiff's mental limitations at step three and Plaintiff's residual functional capacity ("RFC"). Accordingly, the Court affirms the Commissioner's decision.

At step three, an ALJ determines whether a claimant's impairments are "presumptively disabling," meaning they are "so severe that they prevent a person from doing any gainful activity and make further inquiry into whether the person can work unnecessary." *Jeske v. Saul*, 955 F.3d 583, 588 (7th Cir. 2020). An impairment is presumptively disabling if it is listed in 20 C.F.R. § 404, Subpart P, Appendix 1 or if it is medically equivalent to a listing in that appendix. 20 C.F.R. § 404.1525(a). For an impairment to meet or medically equal a mental disorder listing, a claimant must establish that the impairment satisfies the "paragraph A" criteria, which are specific to each listing, as well as either the "paragraph B" criteria or the "paragraph C" criteria. 20 C.F.R. § 404, Subpart P, App. 1, § 12.00. To satisfy the paragraph B criteria, mental impairments must result in at least one extreme limitation or two marked limitations in four functional domains: understanding, remember, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00. To satisfy the C criteria, evidence must show a medically documented history of a mental disorder for over two years, the claimant's reliance on ongoing medical treatment, and only marginal adjustment. *Id*. In this case, the ALJ found that Plaintiff had moderate limitations in three functional domains and a mild limitation in one, and therefore did not meet the paragraph B requirements. R. 20-24. The ALJ also concluded that Plaintiff's mental limitations did not satisfy the criteria of paragraph C because the evidence did not demonstrate that Plaintiff "has minimal ability to adapt to changes in environment or demands not already part of [her] daily life." R. 24.

A claimant's residual functional capacity is the maximum a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a); *see also* SSR 96-8p, 1996 WL 374184, at *2. When determining a claimant's RFC, an ALJ must "evaluate the intensity and persistence of [a claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p. ALJs must build "an accurate and logical bridge from the evidence to" the RFC. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 777 (7th Cir. 2022). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Id*. (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)). In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform light work with certain postural and mental limitations. R. 24-30.

3

The ALJ reached her conclusions as to Plaintiff's mental impairments and Plaintiff's RFC after considering the medical evidence, including Plaintiff's testimony, medical notes from Plaintiff's doctors, and the results of mental status examinations. R. 20-24. The ALJ also weighed the medical opinions of non-examining state consultants. R. 26, 29-30. She found the opinions of non-examining state physician, Dr. Aquino, and non-examining state psychologist, Dr. Hudspeth, generally persuasive. *Id*. Dr. Aquino opined that Plaintiff could perform light work with certain postural limitations. R. 26-27. Dr. Hudspeth opined that Plaintiff's mental conditions caused no limitations in understanding, remembering or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and mild limitations in adapting herself. R. 29, 102. Although the ALJ found both opinions "largely persuasive," she determined that Plaintiff had greater limitations, imposing additional physical restrictions to Plaintiff's RFC and finding that Plaintiff had a mild limitation in understanding, remembering, or applying information and a moderate limitation in adapting or managing herself. R. 26-27, 29-30.

Plaintiff argues that the ALJ "played doctor" when determining the severity of Plaintiff's mental limitations and her residual functional capacity. However, Plaintiff does not specifically allege what medical findings the ALJ impermissibly made. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) ("[Plaintiff] must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record."). Unlike the ALJs in the cases cited by Plaintiff, this ALJ did not make any independent medical findings or dispute any of Plaintiff's diagnoses. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (remanding because ALJ relied on an unremarkable MRI as evidence that migraines were not a significant problem without any doctor suggesting that the MRI meant anything about migraines); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (remanding in part because ALJ substituted his opinion for that of a doctor, concluding that the claimant's daily activities were incompatible with his medical diagnosis); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (remanding in part because ALJ concluded that Plaintiff's prognosis was inconsistent with his medical diagnosis). Plaintiff seems to broadly argue that the ALJ played doctor by making conclusions about Plaintiff's mental limitations and her RFC. These are not impermissible medical conclusions because they are issues reserved to the ALJ by the Social Security regulations. 20 C.F.R. § 404.1520b (issues reserved to the Commissioner include "[s]tatements about whether or not [Plaintiff's] impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1" and "[s]tatements about what [Plaintiff's] residual functional capacity is").

To the extent Plaintiff claims that the ALJ "played doctor" by imposing greater limitations than those opined to by the two non-examining state agency consultants, the Court finds no error. ALJs do not "defer or give any specific evidentiary weight, including controlling weight to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Accordingly, ALJs do not need to rely on any specific medical opinion. *See Poole v. Colvin*, No. 12CV10159, 2016 WL 1181817, at *8 (N.D. Ill. March 28, 2016). The ALJ evaluated the medical opinions and found that the objective medical evidence, Plaintiff's contemporaneous treatment documentation, and her presentation throughout the hearing supported greater limitations than those ascribed by the available medical opinions. R. 26, 29. This was not error. *Id.* ("[A]n ALJ does not err when he finds a claimant to have an RFC

4

which is more limited than that ascribed by the medical experts."); *see also Karla J.B. v. Saul*, No. 19CV50019, 2020 WL 3050220, at *5 (N.D. Ill. June 8, 2020) ("[T]he ALJ committed no error by finding Plaintiff more limited than any medical experts opined necessary because the ALJ partially relied on the only medical opinions available when making that determination."). Even if the ALJ did err by deviating from the medical opinions, any error was harmless because the ALJ found Plaintiff more restricted than either medical source. *Ricky L. v. O'Malley*, No. 23CV6006, 2024 WL 3848552, at *12 (N.D. Ill. Aug. 16, 2024) (collecting cases that have rejected similar arguments).

Additionally, the ALJ did not need to call a medical expert to testify to the severity of Plaintiff's symptoms because there was sufficient evidence in the record and no inconsistencies in the evidence. *See Jirau v. Astrue*, 715 F. Supp. 2d 814, 826 (N.D. Ill 2010) ("Unless required to develop an inadequate record or resolve ambiguities, the decision to call a medical expert and/or order a consultative examination is within the ALJ's discretion."). The completeness of a record is "generally committed to the ALJ's discretion." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). While the ALJ could have consulted a medical expert, she was not required to do so and although ALJs have "some independent duty to develop the record," it is Plaintiff "who bears the burden of proving that [she] is disabled." *Poole*, 2016 WL 1181817, at *9 (internal quotation marks and citation omitted).

Another argument Plaintiff raises is that the ALJ placed undue weight on Plaintiff's ability to perform daily activities. ALJs are entitled to use a claimant's daily activities to evaluate the intensity, persistence, and limiting effects of a claimant's symptoms. SSR 16-3p. Plaintiff does not specifically allege what daily activities the ALJ impermissibly weighed. *See Morales*, 103 F.4th at 471 (holding that Plaintiff must identify specific evidence the ALJ overlooked or discounted). Even considering what the Court can cobble together regarding this argument, the Court finds no error in the ALJ's consideration of Plaintiff's daily activities. For example, as the Commissioner pointed out, the ALJ considered that Plaintiff's "reported activities" included "vigorous outdoor play with a dog." R. 26. The ALJ appropriately found that this indicated greater physical abilities than Plaintiff alleged. *Id*.

Plaintiff also claims that the ALJ did not explain her finding that Plaintiff is able to "sustain the necessary attention and concentration in two-hour increments throughout the day to sustain simple job duties assuming typical work day breaks." R. 24. The ALJ stated that she accounted for Plaintiff's limitations, particularly her moderate limitation in concentrating, persisting, and maintaining pace by "restricting the complexity of claimant's work tasks, interactions with others, and changes in the work place." R. 30. She made these accommodations in accord with the opinion of Dr. Hudspeth, the non-examining state psychologist, who opined that Plaintiff "had sufficient attention/concentration as well as cognitive/memory and thought processing skills for simple, routine, repetitive tasks." R. 29-30, 105. The ALJ found the state psychologist's opinion generally persuasive and adopted this proposed RFC almost entirely.[2] R. 30. An ALJ may reasonably rely on the RFC determination of a medical expert. *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). Though the state psychologist's proposed RFC did not explicitly include the two-hour

---

[2] The ALJ did make a slight change to Dr. Huspeth's proposed RFC, after finding that "[n]othing in [Plaintiff's] treatment documentation or elsewhere in the record supported any preclusion of the performance of simple and detailed but not complex, tasks." R. 30.

5

interval Plaintiff questions, courts have found that "normal breaks occur every two hours during a regular 8-hour workday." *Warren v. Colvin*, No. 12CV3298, 2013 WL 1196603, at *5 (N.D. Ill. March 22, 2013). The ALJ did not err by assuming that the state psychologist's opinion accounted for normal breaks, particularly given the state psychologist also opined that Plaintiff was not significantly limited in her ability to "complete a normal workday and workweek without interruptions" and "perform at a consistent pace without an unreasonable number and length of rest periods." R. 105; *see also Winsted v Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) ("The court applies a common-sense reading to the entirety of an ALJ's decision."). Additionally, the ALJ noted Plaintiff's testimony that she could not concentrate, but also found that Plaintiff "denied trouble with concentration during multiple months since the filing date of the application," mental status examinations typically noted "grossly intact" concentration, and "typically [Plaintiff] demonstrates that while she is taking prescribed medication and following recommended treatment protocol, she is typically noted to be grossly intact in her memory and concentration."[3] R. 21-23, 29. These findings also supported the ALJ's RFC determination that Plaintiff had the capacity to sustain simple job duties in normal intervals of two hours. R. 23, 29.

This Court's review "proceeds with a light touch – not holding ALJs to an overly demanding evidentiary standard." *Thorlton v. King*, 127 F.4th 1078, 1080 (7th Cir. 2025). This Court does "not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). The ALJ conducted a thorough review of the medical record, provided detailed explanations for her determinations of Plaintiff's mental limitations and RFC, and supported those determinations with substantial evidence.

## CONCLUSION

The decision below is affirmed. Final judgment will be entered accordingly.

Date: August 13, 2025                    ENTER:

*Margaret J. Schneider*
United States Magistrate Judge

---

[3] The ALJ made these findings when discussing Plaintiff's mental impairments at step 3, but the Court will not discount that evidence "simply because it appears elsewhere in the decision." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("To require the ALJ to repeat such a discussion throughout his decision would be redundant.").